## RUDOLPH·WURLITZER CO v CLARK

Ohio Appeals, 2nd Dist, Miami Co

No 325. Decided Dec 7, 1933

Raymond S. Caulfield, Piqua, for plaintiff in error.

Bernard S. Keyt, Piqua, for defendant in error.

## OPINION

By BARNES, J.

On the issue raised that there was a written extension of the time of payment to August 1, 1932, no such writing was introduced in evidence and on interrogation it developed that the plaintiff made no claim that any such writing was delivered to him. On the question of extension of payment the testimony of the plaintiff is as follows:

"Q. What was the last payment date that you made there?

A. May 5, 1932.

Q. What happened then between you and the Wurlitzer Company in regard to the purchase of this radio?

A. I went up and explained that I was out of work and did not expect to get work until August 1, and he wrote down that it would be all right, that I would not have to come in until August 1, and wrote it in the book where he marks the payments made.

Q. What did he write?

A. I can't recall the words. It was upside down but that was the gist of it. I was out of work; I went in and payment time was extended until August 1."

Then in cross-examination, the following:.

"Q. When you went in the Wurlitzer store who was taking care of the account?

'A. I don't know the name.

Q. Was Mr. Basler there?

A. Yes, he was there.

Q. Do you know what paper he wrote it on?

A. He wrote it on the paper where I made the weekly payments.

Q. Did he give you anything?  A. No.

Q. You allege in your petition that he agreed in writing to extend payment to you; have you got that writing?

A. No, he has got it on the books up there.

Q. No writing was ever given to you?

A. No."

Defendant, through Mr. Basler, its representative; denied that any extension of time of payment was made. The sheet of the carrying charge account was introduced in evidence, marked Defendant's Exhibit 2, and is claimed to be the original charge account against Mr. Clark. No written memorandum appears thereon, such as is claimed by plaintiff, nor does the sheet bear the marks of any erasures.

Under this state of the record we have nothing before us except the claimed oral agreement for extension and it can not be accepted as a valid agreement for the reason that there is no consideraton to support it.

The original obligation was in writing, being a note and a chattel mortgage securing the same. After execution it can not be modified or changed by parol, except by clear and convincing testimony and even then must be supported by consideration. There is a total absence of any evidence of consideration, therefore this issue must be resolved against the plaintiff, Clark.

The plaintiff being in default on payments, the defendant had the legal right, under the terms of the mortgage, to repossess the radio "by process of law or otherwise." The word "otherwise" must be construed to mean any other method recognized under the law. The leading case in Ohio for repossessing property under the provisions of a mortgage and without legal process is **Edmundson v Pollock, 5 C.C., 185.** The first syllabus reads as follows:

"Where a mortgage of chattel property contains a provision that the mortgagee upon default made, may take possession of the property and sell the same at public or private sale, but that until default the mortgagor shall retain possession, such provision creates an implied contract that the mortgagee may, upon such default, enter the place where the property is kept by the mortgagor and take the same."

The Edmundson case has many features very similar to the instant case. In the cited case there is evidence that considerable force was used in repossessing the household goods from the home of the plaintiff, whereas in the instant case there was no actual force whatever. The most that is claimed is an unlawful entry in walking into the room from the outside porch. The facts relative to the entrance are in dispute.

The wife of the plaintiff, Clark, was on the outside porch when a representative of the defendant came up to her and question-

ed her as to making payment. The plaintiff, Clark, was not at home. Mrs. Clark said that they could not make any payments and suggested that they see her husband. Mr. Basler, the manager of the defendant company, called to his assistant sitting in the company car that they would take the radio. The colored man came into the yard. Mrs. Clark stated that she was crying and went into the house to get a handkerchief. The colored man, in his testimony, says he followed her in through the open door, unfastened the radio, which was located right by the door, and carried it out. Mrs. Clark testifies that she did not know that either of the men were following her into the house until after she returned from getting her handkerchief and at that moment the colored man was unfastening and removing the radio. She said nothing to him whatever, nor did he say anything to her. The two men placed the radio in their car and drove away with it. The same day a letter was addressed to Mr. Clark advising that the company had repossessed the radio and suggesting that he present himself and make arrangements for back payments. The day following suit was instituted by Mr. Clark for damages.

On any disputed facts it will not be the disposition of this court to make any contrary finding to that of the trial court. The well recognized rule will be followed that a reviewing court shall not reverse on the weight of the evidence unless it is so manifestly against the weight as to shock the conscience.

It is the conclusion of this court that under the evidence, giving it the most favorable consideration to the plaintiff below, no right of recovery is shown. It is not within the province of this court to pass upon the manner and method of doing business by the defendant, or whether or not it would have been the decent thing to do to have extended credit for a longer period of time before repossessing the radio. The manners and methods of doing business are triable at the bar of public opinion, and their success, present and future, will be in the hands of their customers. This court has no power except to determine legal rights.

It is our conclusion that the defendants were within their rights, and therefore the plaintiff's suit must fail. We follow **Edmundson v Pollock, 5 C.C., 185** and the great weight of authority in other jurisdictions. 57 L.R.A. annotations at page 26.

We have examined with care the following authorities cited by counsel for plaintiff Clark:

**Bainum v Midland Acceptance Corporation, 12 Abs 252;**

**Ohio Jurisprudence, Volume 7, §96;**

**Rose Company v Mowery, 33 Oh Ap, 488; 14 Abs, page 13; Syl 1;**

**Timmons v State, 34 Oh St, 426.**

Other cases cited have been examined but these bear on the question of measure of damages and need not be specially referred to in this opinion.

Taking the above cases in order, we find that case cited in 12 Ohio Law Abstract. supra, is not at all similar in its facts and hence is not in point. In the decision of Judge Hamilton, we find the following:

"It must either get possession by voluntary surrender or court action."

As applied to the facts under consideration, we are in thorough accord with Judge Hamilton in his pronouncement, but the words "voluntary surrender" can not be given general application to include facts similar to the instant case.

The first paragraph under §96, **Volume 7, Ohio Jurisprudence,** is quoted in full in brief of defendant in error. The basis for this text as disclosed from note 7 is the case of **Royal Furniture Company v Wiest, 23 C.C. (N.S.), 425.** The law of this case is set out in Syllabi 1 and 2 and is as follows:

"1. Punitive damages may be awarded when one in committing a wrong has so conducted himself with regard to another as to show a reckless disregard of such other's rights."

"2. Where the facts set forth in the petition show a reckless disregard of plaintiff's right on the part of the defendant, malice is sufficiently pleaded to support an award of punitive damages."

The statement of facts on page 427 discloses the wanton disregard of plaintiff's rights, and a mere casual reading of these facts will readily distinguish the reported case from the instant case.

The remaining portion of §96 of **Volume 7, Ohio Jurisprudence,** the text of which is taken from **Edmundson v Pollock, 5 C.C., 185,** states the law under facts similar to the instant case. We quote a portion and make reference to the remainder:

"Where a chattel mortgage provided that in case any installment should remain due and unpaid for over ten days, the mortgagees might take possession of the property and sell the same at public or private

sale, the general rule applies, that the property may be seized wherever it is found.and that a license to enter another's premises for that purpose justifies the entry, when no unnecessary force is used or injury committed."

In the case of **Rose Company v Lowery**, 33 Oh Ap, 488, we find a recital of facts in which entrance was gained into the premises the doors of which were locked and the family away at the time, and this was held to be an unlawful entry. With this conclusion we are in thorough accord and this court has so held in the case of **Cornelius v Wright, 14 Abs, page 13**. Judge Lemert in deciding the Rose v Lowery case, supra, quotes from **Edmundson v Pollock**, 5 C.C., 185, as follows:

"We find the law in Ohio and other jurisdictions to be that the law will not permit the sanctity of one's dwelling house, which from very ancient times has been regarded as his castle, to be violated in this manner."

In the case cited in **Volume 14, Ohio Law Abstract**, above referred to we have the disclosed facts that entrance was gained through a locked door. Doors are locked to keep people from entering, and it is well understood by laymen, as well as the law, that gaining entrance through a locked door is unlawful.

The case of **Timmons v State, 34 Oh St, 426**, was a criminal action wherein the defendant was charged with burglary and in this case it is determined that the force necessary.to push open the closed and unfastened transom constituted a breaking. Under burglary we have an entirely different situation to deal with. The very purpose of entering is unlawful and hence in criminal actions the law recognizes constructive breaking. If your neighbor comes to your home to pay you a visit, and instead of knocking, turns the latch and walks in, it could hardly be contended that this act standing alone would be unlawful. On the other hand, if a total stranger would come similarly, there would be an unlawful entrance unless explained along the line of some lawful purpose. In the first instance there is the implied invitation, if the social relations between the parties is of such character as to deny any unlawful purpose. In the second instance the relation of the parties is of such a character that no invitation could be implied, and it would devolve upon the individual making such entrance to make explanation showing a lawful purpose.

In the instant case the purpose was lawful. The wife was at home, and even if the employe of the defendant company opened the screen door and walked in behind the wife of the plaintiff rather than go in the open door, as claimed by witnesses for the defendant, there would be no unlawful entering under the facts of this case.

It is not the law of Ohio that the defendants were required to procure the consent of the plaintiff, Clark, before they could repossess the property. That consent was given in the mortgage and on the question of consent nothing more was needed. Where the parties are entitled to repossess the property, as we find the defendant was in this case, they must demean themselves properly in so doing. We are unable to find anything in the record that shows improper conduct, as the law recognizes it.

The judgment of the court below will be reversed at costs of defendant in error. Exceptions will be allowed to the defendant in error.

HORNBECK, PJ, and KUNKLE, J, concur.